[Civ. No. 12756.   First Dist., Div. One.   Mar. 16, 1945.]

ALBERT E. JARKIEH, Respondent, v. EMMA BADAGLIACCO, Appellant.

428

Emmett R. Burns, James M. Thomas and James A. Himmel for Appellant.

O'Connor, Neubarth & Moran and Harold H. Cohn for Respondent.

PETERS, P. J.—There are pending before this court several appeals and motions, all connected with plaintiff's attempts to secure a dismissal of the appeal of defendant, or with defendant's attempts to secure relief from her default in failing to have the record prepared within the time prescribed by law.

Plaintiff and defendant are brother and sister and administrator and administratrix of the estate of their deceased mother. The mother had several bank accounts in her name as trustee for defendant, or in the names of herself and defendant as joint tenants. Plaintiff claims a one-half interest in each account, and brought this action to have such right declared. The case was tried before a jury, and, on July 13, 1943, a verdict was rendered for plaintiff. On October 11, 1943, defendant, within the time required by law, filed her notice of appeal. Rule 4 of the Rules on Appeal, effective July 1, 1943, requires an appellant to serve on respondent and file with the court clerk within ten days after filing the notice of appeal, a notice to prepare the reporter's transcript. Subdivision (c) of this rule provides: "The notice given by the appellant under the foregoing provisions of this rule shall not be effective for any purpose unless, within ten days after notification by the clerk of his estimate of the cost of preparing the reporter's transcript as designated by the notices of the parties, the appellant shall either deposit with the clerk an amount of cash equal to the estimated cost . . . . or file with the clerk a waiver of such deposit signed by the reporter. When the appellant has complied with the provisions hereof, the clerk shall forthwith direct the reporter to prepare the reporter's transcript. . . ." Subdivision (d) requires the reporter to prepare the transcript within thirty days of receipt of notification by the clerk.

On October 20, 1943, well within the ten-day limitation of rule 4, by stipulation of counsel and with the approval of the trial judge, the time for filing the notice to prepare the transcript was extended for a period of ten days. The trial court refused any further extension, and on October 30, 1943, a notice to prepare the transcript was duly served and filed. On November 12, 1943, the court reporter advised counsel for defendant that the cost of preparing the transcript would be $1,000. Defendant's counsel did not make any financial arrangements with the reporter until March 13, 1944, when associate counsel handed the reporter a check for $1,000. Obviously, this step was several months too late unless defendant is to be relieved of her default.

On March 2, 1944, plaintiff moved in the lower court to terminate proceedings to obtain a transcript. This motion was granted on March 15, 1944, and defendant has appealed therefrom. Thereafter, defendant moved to vacate the order terminating the proceedings. This motion was denied in April of 1944, and defendant has appealed from such order of denial. Defendant now moves to dismiss these two appeals taken by her. Both of these appeals must be dismissed for the reason that under the new Rules on Appeal a motion to terminate is unauthorized, and therefore an order granting such a motion is nonappealable. (*Averill* v. *Lincoln*, 24 Cal.2d 761 [151 P.2d 119].) In that case the changes accomplished by the new rules were commented on as follows (24 Cal.2d at p. 763) : "Under the old statutes and former rules, control over the preparation of the record on appeal was in the hands of the trial court, and its power to accept or reject a record, to grant or deny extensions of time, and to grant or deny relief from default, was virtually unlimited.

"The new rules constitute a fundamental departure from the old procedure in the following respects: (1) Fixed periods are specified for the performance of the various steps in preparing the record, and when the allotted time has elapsed the appellant is in default. (Rules 4-7.) (2) The trial court has authority to extend time for limited periods, and has no power to extend if the time has already expired. (Rule 45(b).) (3) The appellate court alone has power to grant additional extensions of time and to relieve from default. (Rules 45(c) and 53(b).)

"As a result of these changes, the motion to terminate pro-

ceedings for a record has disappeared from our procedure. If the specified time and allowable extensions have elapsed, the appeal will be dismissed under rule 10(a) unless the appellate court grants relief.''

■ Under rule 45(b) the power of the superior court to grant extensions of time for doing any act or acts involved in the preparation of the record is limited to a total of ninety days. No power to relieve from default, even within the ninety days, is granted to the trial court. After the expiration of ninety days' control over extensions and control over the preparation of the record are in the appellate courts alone. It follows, of course, that a motion to terminate proceedings in the lower court is a nonexistent motion. It should be mentioned that these new rules went into effect on July 1, 1943, and the Averill case was not decided until August of 1944, so that neither the trial court nor counsel had the benefit of that decision when these motions were made and passed on in March and April of 1944.

Prior to the April, 1944, order, defendant's counsel ordered the reporter to proceed with the preparation of the transcript so that on the date the order refusing to vacate the order of termination was signed, a substantial portion of the transcript had been transcribed.

■ When counsel's attention was directed by this court to the case of *Averill* v. *Lincoln, supra,* defendant on January 19, 1945, moved this court to dismiss her two appeals above mentioned, and, under rule 53(b), moved to be relieved of her default. On the hearing of this motion on January 22, 1945, counsel for plaintiff under rule 10(a) moved to dismiss the appeal from the judgment. By stipulation these two motions were consolidated, and it was stipulated that on the motions this court could consider the entire record produced on the appeals from the order terminating and from the order refusing to vacate, plus certain new affidavits filed in support of the present motions.

The procedure now adopted by counsel is the proper procedure under the new rules. For any default in preparing the record relief must be secured, if at all, in the court to which the appeal has been taken. The last sentence of rule 53(b) reads: ''The reviewing court for good cause may relieve a party from a default occasioned by any failure to comply

with the new rules, except the failure to give timely notice of appeal.'' Rule 10(a) contains the converse power. It provides: ''If the appellant shall fail to perform any act necessary to procure the filing of the record . . . and such failure is the fault of the appellant and not of any court officer or any other party, the appeal may be dismissed on motion of the respondent or the reviewing court's own motion.''

Before the adoption of these rules the control over, and responsibility for, the preparation of the record was in the trial court, and its discretion in relieving from default or in terminating would not be disturbed in the absence of a manifest abuse. (*Hohnemann* v. *Pacific Gas & Elec. Co.,* 31 Cal.App.2d 692 [88 P.2d 748]; *Smith* v. *Jaccard,* 20 Cal. App. 280 [128 P. 1023, 1026]; *Beard* v. *Beard,* 16 Cal.2d 645 [107 P.2d 385]; *Bonfilio* v. *Ganger,* 60 Cal.App.2d 405 [140 P.2d 861]; *Cooke* v. *Cooke,* 60 Cal.App.2d 451 [140 P.2d 989]; *Wood* v. *Peterson Farms Co.,* 131 Cal.App. 312 [21 P.2d 468]; *Bodin* v. *Webb,* 17 Cal.App.2d 422 [62 P.2d 155].) That discretion is now conferred on the appellate courts. Without regard to what the trial court did on the motions to terminate and to vacate, we are called upon to determine whether in our discretion we should grant defendant's motion for relief from default or plaintiff's motion to dismiss. We turn to a discussion of these problems.

In determining whether to relieve from default we are faced with two conflicting policies. There is, of course, a strong public policy in favor of hearing appeals on their merits and of not depriving a party of his right of appeal because of technical noncompliance where he is attempting to perfect his appeal in good faith. On the other hand, a respondent is likewise entitled to consideration. He is entitled to have the appellant proceed with expedition, and if the appellant fails to comply with the rules, to have the appeal dismissed. But this right to a dismissal is not absolute, except for failure to file the notice of appeal. Under the rules, the trial court may grant extensions not to exceed ninety days, the appellate court may grant additional extensions (rule 45(c)), and the appellate court may relieve from default (rule 53(b)). In determining whether an appellant should be relieved from default, various factors must be considered such as the length of the default, the circum-

stances surrounding the default, the relative injury that will flow to either party by granting or denying the relief, the nature of the default and other factors. Each case must turn on its own facts, and precedents are of little value.

There have been many affidavits, counteraffidavits, supplemental affidavits, affidavits in rebuttal, and affidavits in surrebuttal filed in these proceedings. On several important matters the affidavits agree as to the facts. On other important matters, and on many trivial matters, they are in conflict. The affidavits agree that shortly after the jury brought in its verdict for plaintiff, counsel for plaintiff orally agreed not to execute on the judgment until the matter was finally determined. Counsel has scrupulously observed this agreement. It is also agreed that shortly after the jury brought in its verdict on July 13, 1943, counsel for plaintiff initiated negotiations for a settlement of the entire controversy. Admittedly, these negotiations continued until October 30, 1943, when defendant rejected the offer made by counsel for plaintiff. It is also admitted that thereafter, and until February 18, 1944, defendant and her counsel made various counteroffers of settlement, all of which were rejected by plaintiff and his counsel. Counsel for plaintiff in his affidavit filed in this court frankly and fairly admits that he participated in such negotiations as late as February 18, 1944, when he and his client visited the office of the attorney for defendant to entertain and discuss a new offer of settlement. The affidavits are sharply in conflict as to whether there was an oral understanding between counsel that the transcript need not be prepared pending these negotiations. Counsel for plaintiff denies making such an agreement and avers that after October 30, 1943, he was under the impression that the transcript was being prepared. Counsel for defendant avers that such an understanding was had. We do not find it necessary to pass upon this conflict. The record shows that it is admitted that from July, 1943, to February, 1944, the parties and their counsel were discussing a compromise. Obviously, if $1,000 were expended for a transcript it would materially affect the result of that compromise. Defendant and her counsel were proceeding to try to settle the case and plaintiff and his counsel were participating in those conferences. Regardless of whether or not there was an agreement that the preparation of the transcript should be delayed,

counsel for defendant and defendant apparently believed, in good faith, that no advantage would be taken of their default. Assuming defendant was careless in not having a formal understanding concerning the record, nevertheless she was, in a sense, lulled into a state of security by plaintiff's participation in the settlement conferences. This is a factor that has always been considered of some importance in determining whether to waive a default. (*Bonfilio* v. *Ganger,* 60 Cal. App.2d 405 [140 P.2d 861].) Defendant should have made arrangements to pay the reporter by November 22, 1943. This, she did not do until March 13, 1944. But it is significant that plaintiff and his counsel participated in a settlement conference as late as February 18, 1944, and that shortly after the motion to terminate was filed, arrangements were immediately made with the reporter. Thereafter, a considerable portion of the record was prepared.

The real default here is from February 18, 1944, to March 13, 1944, less than one month. What delay has occurred since March of 1944 has been caused by counsel's mutual and understandable mistake in following an improper procedure. When these factors are considered, together with the fact that the new rules went into effect on July 1, 1943, but thirteen days before the verdict of the jury, we think defendant has made a sufficient showing to cause this court to relieve her from her default.

The appeals from the order terminating proceedings to secure a transcript and from the order denying the motion to vacate such order are dismissed for the reason that such orders were unauthorized and are nonappealable; that motion of plaintiff made under rule 10(a) to dismiss the appeal from the judgment is denied; the motion of defendant made under rule 53(b) to be relieved of her default is granted, and defendant is granted thirty days from the date this opinion becomes final to have the record prepared and filed as provided by the Rules on Appeal.

Knight, J., concurred.

WARD, J., Concurring and Dissenting.—*I concur* in the order of dismissal of the purported appeals from the order terminating proceedings and from the order denying the motion to vacate such order. *I dissent* from the order of this

court denying plaintiff's motion to dismiss the appeal, and from the order granting defendant's motion to be relieved of default.

In this matter it is necessary to deal with new rules (Rules on Appeal, adopted by the Judicial Council, effective July 1, 1943). It may be assumed that the purpose in transferring the rule-making power from the Legislature to the judiciary, in the matter of the preparation of the record on appeal, is to facilitate and expedite the business of the court, to accomplish which it is necessary that all parties conform to the new rules. In *Murphy* v. *Krumm*, 21 Cal.2d 846, 848-849 [136 P.2d 8], wherein a reasonably strict adherence to the rules of the court is advocated, the court said: "It is argued that regardless of defendants' delay both in the payment of the fee prescribed for the undertaking of an appeal and in the filing of points and authorities as above detailed, the attendance to these matters *prior to the hearing of the motion to dismiss* will of itself, justify a denial of the relief sought on this proceeding. While there is a line of decisions in this state supportive of this proposition [citing cases], these cases, by reason of their conflict with the plain language of rule V of the Rules for the Supreme Court and District Courts of Appeal and its uniform interpretation by this court, are of no avail here." It should be noted that the decisions in all cases cited in the above paragraph are by the District Court of Appeal and that no petition for a hearing was filed in the Supreme Court in any of those cases. It was further said in the Murphy case (p. 849): "That rule has the force of positive law so far as the rights of the parties are concerned. (*Brooks* v. *Union Trust etc. Co.*, 146 Cal. 134, 138 [79 P. 843]; *Helbush* v. *Helbush*, 209 Cal. 758, 763 [290 P. 18].) The right of the complaining party to a dismissal must be determined by the facts as they exist at the time the notice of motion is given, and it is not destroyed by the mere subsequent filing of the necessary document. (*Shain* v. *People's Lumber Co.*, 98 Cal. 120, 122 [32 P. 878]; *McCabe* v. *Healey*, 139 Cal. 30, 32 [72 P. 359]; *Raisch Improvement Co.* v. *Arata*, 193 Cal. 573, 574 [226 P. 399].)"

Rule 53(b) provides that an appellate court may not set aside a default based upon a failure to serve and file a notice of appeal within the time limit. It appears that failure to conform with the requirements of the new rules in other re-

spects may be excused. There is no method of determining an abuse of discretion by further appeal if the motion is presented direct to the Supreme Court. Remission of the penalty rests entirely in the discretion of the appellate court to which the appeal has been taken, unless there is an abuse of discretion. Nevertheless, this trial function, as distinguished from matters ordinarily within the province of an appellate court, has been imposed upon the justices collectively and individually. Unless the Supreme Court declares to the contrary, it must be assumed that on petition for hearing, after disposition by the District Court of Appeal, the Supreme Court will follow the test heretofore applied by all appellate courts, namely, did the trier or triers of the facts—in this case, appellate judges—abuse their discretion. The determination of that question rests completely with the Supreme Court. When an appellate division is not unanimous in finding the facts, ordinarily the majority view will be accepted unless there appears a clear abuse of discretion.

A former opinion was filed in this case but the matter was resubmitted on the court's own motion for the purpose of considering a point not theretofore brought to our attention, namely, the rule announced in *Averill* v. *Lincoln,* 24 Cal.2d 761 [151 P.2d 119]. I find that I cannot agree with my associates. My view, irrespective of any previous opinion filed in this matter, is that the appellant has been wilfully negligent in the prosecution of the appeal and I believe it to be my duty to say so.

*Averill* v. *Lincoln, supra,* held that the new rules constituted a fundamental departure from the old procedure, and in the course of the opinion said (p. 763) : "Fixed periods are specified for the performance of the various steps in preparing the record, and when the allotted time has elapsed the appellant is in default." After a litigant has had his day in court he should, under the new Rules on Appeal, be held to a reasonably strict performance. If the question presented on appeal or on a motion to the appellate court shows a failure to comply with a strictly jurisdictional or mandatory rule, there is no opportunity to use discretion, as under such circumstances the court of appeal has no power to review the order.

However, settlement of disputed issues and the right of appeal on the law and the facts in accordance with appro-

priate court rules should be favored. Failure to comply strictly with the rules may be excused in the interest of affording a litigant an opportunity to be heard on appeal. If the failure to comply with the rules is inadvertent, and there is no dispute upon such fact—as in *Averill* v. *Lincoln, supra,* wherein a law secretary had been instructed to file an original and serve a copy of a ''notice of election to proceed on a settled statement,'' and the secretary instead of personally serving the copy upon opposing counsel, mailed it, resulting in his receipt of the copy two days late—the violation of the rule may be excused as the Supreme Court held in that case. In my opinion the facts in the Averill case do not even resemble the facts in the present case.

In this case defendant gave notice of appeal. After extension of time by stipulation and order of court she served and filed a notice to prepare a reporter's transcript, etc., and subsequently received an estimate of cost. She failed to deposit with the clerk an amount of cash equal to the estimated cost, with directions to apply the same to the fees, etc. within ten days of the time she received the estimate. (Rules on Appeal, pt. II, rule 4(c).) Not only did defendant fail within the ten-day period to comply with the rule, but she failed for four months to do so.

Rule 45(b) of the Rules on Appeal provides that the superior court may grant an extension or extensions of time within which to perform any act in the preparation of the record on appeal in a civil action not exceeding ninety days. If the superior court had the power to grant extensions and had used such power, in this case defendant would still, by thirty days, have exceeded the time within which to make the deposit.

Rule 43 and subdivision (c) of rule 45 provide for extensions of time by a chief justice or presiding justice in his discretion, without notice to opposing party to do any act required or permitted under the rules. . . . The defendant herein, however, is faced with the fact that the record does not indicate that any application was made to the presiding justice.

The excuse offered by defendant is that the attorneys for plaintiff had agreed with her attorneys that they (the attorneys for plaintiff) would not require the preparation of the transcript until ''we can go no further to settle this matter.'' Whatever agreement was made was oral and at that time re-

ferred to an offer by plaintiff to accept less than the amount awarded him by the judgment.

This proceeding might well be referred to as the battle of affidavits, which raises the question of the veracity of the respective affiants. However, it was stipulated that the complete record of any transcript or document on file might be used on the several motions pending. This is fortunate as in this case the appellate court would not be in the advantageous position of the trial court. The trial judge knew practically all affiants as attorneys or witnesses, had observed their conduct in the trial of the case and was therefore in a better position to determine the credibility of opposing affiants.

The trial judge herein, assuming the old statutory rules to be still operative, passed upon similar motions in favor of plaintiff. He did not, as in the Averill case, face an undisputed fact but affidavits covering the same matters as appear on appeal. This court in the majority opinion correctly declares that the trial court did not have jurisdiction to pass upon the matter. The order made by the trial court is invalid but the fact that the proceedings and subsequent events —all of which by stipulation of the parties are made part of the record on all of these motions—show that the trial court definitely determined the question of veracity in favor of plaintiff. Having been made part of the record, this court is at liberty to consider the transcript of proceedings, and the matter of the determination by the trial court of the veracity of the respective parties. I feel that the judgment of the trial court, with the opportunity of observing the various affiants at the trial, is superior to mine. I am also impressed by the record on these motions, which shows that under the terms of the judgment herein plaintiff was entitled to one-half of the money in certain banks; that practically all of the half which is admittedly the property of defendant has been withdrawn, and that plaintiff's half is still withheld. There appears to be a basis for the statement by the attorney for plaintiff that ''the plan of the attorneys and the plan of the defendant is to hold that money there as long as they possibly can, to stall, stall and stall.''

Eliminating any view based upon the opinion of the trial judge or the arguments by respective counsel, in my opinion the plaintiff should prevail on the questioned motions based

upon certain circumstances which point the way to the determination of the truth.

Irrespective of the conflict in the facts averred in the affidavits, any agreement between the attorneys, oral or written, extending time to a period beyond the limit permitted by the rules would have been of no legal avail unless defendant obtained an order from a court of competent jurisdiction approving a stipulation between them or a separate order extending the time. In this case no order was obtained. The facts differ from *Averill* v. *Lincoln, supra,* wherein the failure to comply with the rules was an inadvertence. Here there appears a reckless disregard of the Rules on Appeal.

It may be suggested that in the present case the attorneys for defendant should be excused because they were not familiar with the new Rules on Appeal. I am sympathetic with them in this respect. It may be assumed that the attorneys for plaintiff also proceeded upon the theory that the old rules were in effect.

The trial judge advised all parties herein that he would strictly enforce the Rules on Appeal. The record shows only one extension of time granted by him. Thereafter an effort to obtain a further extension from the trial judge was met with a denial in form and manner so positive that there does not appear to be any further request for additional time. The trial judge in open court, referring to a telephone conversation with the attorney for defendant "around the first of November, very close thereto, 1943," said: "He asked me at that time if I would consent or stipulate to any further time, and I stated definitely, emphatically and positively, 'No.'" This period "around the first of November is important."

Assuming that the attorney for defendant had been lulled into a sense of security in the belief that it would not be necessary to prosecute the appeal while there was under consideration an offer of compromise made by plaintiff, it is admitted that defendant definitely refused the offer on or about October 30, 1943. From that date on until the early days of March there was no misunderstanding, no lulling of defendant's counsel into a sense of security about the matter, and proof thereof appears in the telephone request by defendant's counsel to the court, at or about that period, requesting an extension of time.

An affidavit sworn to by the attorney for defendant and filed in the superior court March 31, 1944, stated that in the "early part of November 1943" he "stated to counsel for the plaintiff, Harry J. Neubarth, that all negotiations were off and that he would ascertain from the official court reporter what it would cost to prepare a clerk and reporter's transcript and proceed to perfect said appeal." Defendant claims that immediately after such determination the attorney for plaintiff persuaded her attorney not to proceed further with the appeal, and that he was lulled into a sense of security. However, the record shows that pursuant to the request of such attorney the official court reporter made the requested estimate on November 12, 1943.

Some suggestion has been made that a substantial portion of the transcript has been written. In an affidavit by the court reporter the following appears: "[T]hat he dictated and transcribed approximately 174 pages of the proposed transcript on appeal in said action, at the request of defendant and appellant's attorneys at which time he refused to proceed further with the transcript because he was neither paid for such preparation nor were satisfactory arrangements made with him to secure his compensation; that he was paid for the aforementioned dictation and transcription only after repeated demands for payment made upon defendant and appellant's attorney and only after there had been granted in the trial court a motion to terminate proceedings to obtain the transcript on appeal and after the refusal of the trial court to vacate said order."

The failure in the present case to comply with the rules, whether under the old statutes and former rules or under the new Rules on Appeal, is not an inadvertence. It shows negligence far beyond mere forgetfulness or carelessness and demonstrates that defendant knew she had forfeited her right to appeal and hoped that some judge would extricate her from that position. In the words of an able, experienced and esteemed justice of the Supreme Court: "While appellate courts are loath to dismiss appeals, without consideration on the merits, for failure to comply with rules of procedure, such rules are essential to the orderly handling and dispatch of the court's business and create rights which an adverse party is entitled to enforce. (*Shain* v. *People's Lumber Co., supra* [98 Cal. 120 (32 P. 878)], at p. 122; *McCabe* v. *Healey,*

*supra* [139 Cal. 30 (72 P. 359)], at p. 32.)  Under the present circumstances a failure to grant plaintiffs' motion, if not a complete abuse of discretion, would at least constitute an unwarranted disregard of the rule here in point.  To uphold and respect such rule defendants' appeal must be dismissed. (*Hoyt* v. *San Francisco etc. R. R. Co.*, 87 Cal. 610, 613 [25 P. 160, 1066].)''  (*Murphy* v. *Krumm, supra,* p. 850.)

Respondent's petition for a hearing by the Supreme Court was denied May 14, 1945.